## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSEPH OLIVEIRA, M.D.,

     Plaintiff,

vs.                                         Case No.:

DENIS McDONOUGH, Secretary,
DEPARTMENT OF VETERANS AFFAIRS,

     Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL
### INJUNCTIVE RELIEF REQUESTED

Plaintiff Joseph Oliveira complains of Defendant Denis McDonough, Secretary, Department of Veterans Affairs, as follows:

### PARTIES

1.    C.W. Young Healthcare System (Young VAHCS) is a Veterans Administration (VA) hospital and medical center with related services. Young VAHCS is in Bay Pines, Pinellas County, Florida. It is broken down into various services, including the Radiology Service.

2.    Plaintiff is a Hispanic male born in Colombia, South America in November 1961. Plaintiff is a radiologist who has worked for the Defendant at Young VAHCS for 17 years and at all times material to this complaint.

3.    Dr. Bruce Kudryk was the Chief of Radiology and Plaintiff's first-line supervisor until December 31, 2016. From January 2017 to August 2018, Dr. Carlos Martinez was Acting Chief and then Chief and Plaintiff's first-line supervisor. From August 2018 and at all other times material to this complaint, Plaintiff's first-line supervisor was Dr. Eric Lenz, Chief of Radiology.  Until April 2019, Plaintiff's second-line supervisor was Dr. Dominque Thuriere, former Chief of Staff. Since April 29, 2019, Plaintiff's second-line supervisor has been Dr. Elamin Elamin, Chief of Staff.

4.    Each of the employees described herein was employed by Defendant and was acting within the course and scope of his or her employment with Defendant at the time of the conduct described herein.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of the claims in this complaint under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended, including § 2000e-16, and 42 U.S.C. § 2000e-2(m) and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, as amended, including Section 633a.

6.    Plaintiff has complied with all jurisdiction prerequisites to action under Title VII, including having exhausted his administrative remedies. Plaintiff filed a formal EEO complaint related to the events described herein on April 30, 2020. More than 180 days have passed since the filing of his formal complaint, satisfying the jurisdictional requirements of 42 U.S.C. § 2000e-16(c).

**7.** Venue in the Middle District of Florida is proper under 42 U.S.C. § 2000e-5(f)(3), because all the unlawful employment practices described herein occurred and Young VAHCS is located in the district.

## GENERAL ALLEGATIONS

8. Plaintiff has been subjected to disparate treatment and a hostile work environment/harassment based on his national origin, race/ethnicity, and age and to reprisal for his protected EEO activity, as described in the following paragraphs.

9. From 2018 to 2019, Plaintiff was targeted for peer reviews.

10. From 2017 to 2020, Dr. Martinez and Dr. Lenz gave Plaintiff the lowest raises in the Department. During the same period, Dr. Lenz gave Plaintiff the lowest performance bonus in the department.

11. From 2018 to 2020, management disparaged Plaintiff's competency to physicians such as Dr. Hong, Chief of Surgery.

12. On April 25, 2018, during a meeting, Dr. Lucas commented, "We have gotten rid of one guy...," then turned and looked at Plaintiff and stated, "and now we have to get rid of one more." Dr. Lenz then looked at Plaintiff and said, "What do we have to do to get rid of him?" Dr. Velasco then followed with, "Yeah, what more do we have to do?"

13. After Plaintiff reported the April 25, 2018 comments to Dr. Martinez, Dr. Martinez told Plaintiff that an investigation would be done; however, it was not done.

Dr. Martinez told Dr. Elamin, the then Acting Chief of Staff that there was no truth to Plaintiff's complaint.

14.    In or around June 2018, Plaintiff was summoned for a random drug test.

15.    In 2018, Plaintiff was blackballed from "moonlighting" at the James Haley VA in Tampa to prevent him from working there and making extra money.

16.    From at least December 2018 to May 2019, Plaintiff was disproportionately given Stat Lunch duty coverage and made the Stat Radiologist.

17.    In or around the end of 2018, Dr. Lenz has told people that Plaintiff was lazy and connected it to Plaintiff's Hispanic ethnicity.

18.    In late May 2019, Dr. Lenz questioned complainant's competency during a re-credentialing meeting.

19.    In late May 2019, Plaintiff was placed on summary suspension and removed from his scope of practice. He was detailed to the VA Community Care Department to do clerical work and removed from interpreting Radiologic Studies.

20.    In late 2019, Plaintiff was given low performance evaluations by Dr. Lenz. Dr. Lenz gave Plaintiff an overall evaluation for FY 2019 of Satisfactory and evaluated that Plaintiff had "low medical knowledge". In his 13 previous evaluations, Plaintiff had never had anything lower than fully satisfactory.

21.    After Plaintiff was placed on summary suspension following the May 2019 re-credentialing meeting, he went to Bay Pines to review cases to defend himself before the Medical Executive Committee in January 2020. Plaintiff asked that the

audit function be activated, which would show who looked at these cases, so that he could ensure that the cases were chosen randomly. His request was denied.

22.     Plaintiff asked Dr. Lenz for permission to use Plaintiff's office to review the cases that were sent to NTP, so that he could defend himself at the Medical Executive Committee meeting regarding his summary suspension. Dr. Lenz sent Plaintiff an email to not seek out or speak to people in the department when he was there. When Plaintiff arrived on January 22nd, nothing in his office was functional to review cases. Dr. Lenz knew Plaintiff would be there and made no attempt to ensure that he could use his office workstation. Plaintiff had to scramble and find another office despite only being given 2 days to review cases. While Plaintiff was moving personal items to the office he would be using, the program analyst walked in and said hello. Plaintiff responded hello and asked if she could provide data on the number of cases he had read that year and how many times he had been peer reviewed. The program analyst said she could and asked for Plaintiff to send her an email to remind her. He did.

23.     On March 4, 2020, Dr. Lenz sent plaintiff an email saying he wanted to meet. Plaintiff called him to ask the topic of the meeting, and Dr. Lenz refused to tell him.

24.     On March 6, 2020, complainant was issued a proposed admonishment based upon the facts of paragraph 22, *supra*, that was later sustained.

25.     On April 16, 2020, Plaintiff initiated his informal complaint identifying Dr. Kudryk, Dr. Martinez, Dr. Lenz, Dr. Elamin, and Dr. Velasco as Responsible Management Officials (RMOs).

26.     On April 30, 2020, Plaintiff filed his formal complaint, alleging that he was subjected to discrimination and retaliation as well as harassment and a hostile work environment (HWE) based on his age, Colombian origin, Hispanic ethnicity, and reprisal for EEO activity. Plaintiff's formal complaint included the following events:

a.    In 2015, Dr. Lenz was given a peer review to do on me by Dr. Kudryk. Dr. Lenz did the peer review and essentially lied about facts in the case to make me appear sloppy. I appealed this review to the Medical Executive Committee, who agreed that I had handled the case appropriately and reversed Dr. Lenz's review. Dr. Lenz took exception to this and continued to harass me.

b.    On July 24, 2015, Dr. Lenz was named Acting Chief for a day when Dr. Kudryk was off. Dr. Lenz called me to his office to harass me to tell me to stop "cherry picking" the work list. I told him I was reading appropriately, and he said I had better make sure to read the Stat X-rays. At the time of the phone call there was 1 unread Stat X-ray on the list.

c.    On August 21, 2015, I filed a grievance against Dr. Lenz and made it clear to the Union and my service Chief that I was not comfortable with Dr. Lenz being placed in a position of authority above me because he had shown his propensity to harass me and abuse his authority.

d.    In November 2016, Dr. Martinez made Dr. Kudryk lower my performance evaluation from High Satisfactory to Satisfactory. Dr. Martinez himself told me he had told Kudryk to do this, and he had that influence on Kudryk because he was Dr. Kudryk's program director at Tampa General Hospital and got Dr. Kudryk his interventional fellowship when Dr. Kudryk was his resident.

e.    On August 4, 2017, after receiving a phone call from Dr. Lenz, Dr. Martinez marched down the hallway where Radiologist offices are

located and started yelling at me to read the work list in order. He was very aggressive and hostile, and I replied that I was and showed him the case I was reading. At that point he retreated to the hallway, and I asked him, although I already knew, why he was harassing me, and I asked who else he was speaking to like that. The answer was no one. He had walked by the office door of 6 Radiologists to get to mine.

f.     On February 9, 2017, during a Fact Finding into the Radiology Dept. conducted on 2/9/2017 by Dr. Carino, I discussed mismanagement in the department, cronyism, and inappropriate behavior by Dr. Martinez. Dr. Martinez violated the confidentiality of the process and started telling people what I had said during the investigation.

g.     On April 3, 2018, at 3:52 pm, Dr. Lenz called me and told me that there were 5 Stat X-rays on the work list to be read and that I had better do them. I was not scheduled to read x-ray that day, but I try to be a team player and I said I would. Dr. Lenz was on the schedule to read x-rays that day and did not read even 1 Stat x-ray all day. I did notice that after his phone call to me that day Dr. Lenz did read a Thoracentesis and Paracentesis study before he left at 4pm because they were Higher RVU's, even though he did not perform either study. At 4 pm, while I was in the progress of reading the X-rays, Dr. Lenz came by my office personally and said, "you better read those x-rays".

h.     On April 25, 2018, there was a Radiology Dept. meeting with Physicians, Technologists and 2 Psychologists because of the environment of hostility and intimidation fostered by Dr. Lenz and Dr. Martinez. In that meeting my job as a Radiologist at Bay Pines was overtly and explicitly threatened. Dr. Lucas said, "We have gotten rid of one guy," (referring to Dr. Bui) and then turned and looked at me and said, "and now we have to get rid of one more". Dr. Lenz then turned and, while looking at me, said, "Yeah, what do we have to do to get rid of him? We already went to the front office." Dr. Velasco then followed and said "Yeah, what more do we have to do?" I reported this to Dr. Martinez who said he would investigate. 9 days later I asked him what he had found in his investigation, and he replied that he had not asked even 1 question about the incident. I told him I was very disappointed by that, and he told me I was welcome to be as disappointed as I liked. In May 2018, I filed an EEO for the abuse. Dr. Martinez lied to Dr. Thuriere, who was then COS, and told her he investigated and there was no truth to my complaint.

i.      From mid-2016 to 2017, Dr. Martinez, as Chief, and Dr. Lenz, at the time Assistant Chief, harassed me for taking excessive vacation, although I had the most unused vacation in the department and he himself was off 50 days in an 82-day period between Dec.2015/Feb.2016.

j.      From mid-2016 to 2017, I was also falsely accused of unprofessional behavior by Dr. Lenz and Dr. Martinez at a key audit which never occurred. I produced signed statements from 6 witnesses that all said I did nothing wrong and the whole matter was dropped. We had an administrative assistant who was also going to write a letter of support for me, and Dr. Martinez told him he could not.

k.      In or around June 2018, after filling the EEO, I was approximately summoned for a Drug Test which they claimed was random.

l.      From 2016 to 2019, repeated attempts by Dr. Velasco, Lucas, Lenz and Martinez were made to target me in peer reviews to harass me and attempt to slow me down to make me less productive. In 2018, the three-member peer review committee let me know that there was unprofessional increased scrutiny being placed on my work under Dr. Martinez and Dr. Lenz as Chiefs.

m.      Sometime between 2018 and 2020, the behavior extended to speaking poorly about my competency to Physicians such as Dr. Hong the Chief of Surgery, with no basis in fact.

n.      I am Hispanic born in Colombia, South America, and Dr. Lenz has told people in or around the end of 2018 that I am lazy connected to my ethnicity.

o.      In 2016, I was stripped of most of my duties because they told me they wanted to get the younger guys involved in the department.

p.      From 2015 to 2017, I was denied a promotion to Assistant Chief.

q.      In late 2017 the work filters on our computers that can make us more efficient, such as the "In Progress" filter, was removed from my computer while Dr. Lenz, Martinez, Velasco and I believe Lucas retained this filter to give them a work list advantage and to reduce my productivity.

r.      In late 2017/early 2018, seniority was eliminated by Dr. Lenz from the Holiday call schedule. Dr. Lenz instituted a "fairer" call schedule, and the first year it was applied, I, the most senior member of the department, was placed on the least desirable Holiday for being on call, Christmas.

s.   In 2017 to 2020, I have been given the lowest raises in the Department by Dr. Martinez and Dr. Lenz. During the same time, period I have been given the lowest performance bonus in the department by Dr. Lenz.

t.   In 2018, I had an opportunity to "moonlight" at the James Haley VA in Tampa and was blackballed to prevent me from working there and making extra money.

u.   I was harassed by Dr. Lenz and Dr. Velasco on the weekly work schedule by giving me disproportionate Stat Lunch duty coverage as well as making me the Stat Radiologist from at least Dec. 2018 to May 2019 more often than any other Full-time Radiologist.

v.   In late 2019, I was given arbitrary low evaluations by Dr. Lenz. My overall evaluation for the work year that ended on Sept. 2019 was Satisfactory but Dr. Lenz subjectively with no basis in fact evaluated that I had "low medical knowledge". In my 13 previous evaluations, I had never had anything lower than fully satisfactory.

w.   On July 3, 2019, I made a formal complaint of Waste, Fraud, and Abuse of Authority to Dr. Arndt, the Chief VA Radiologist in Washington D.C. I detailed time-card fraud, RVU fraud, waste and overuse of Fee Basis Radiologists, in addition to cronyism in hiring friends from Tampa General to moonlight at Bay Pines to the exclusion of others. Dr. Martinez even attempted to credential a friend with a criminal record. Dr. Lucas, a Radiologist who was abusive to female technologists, was protected by Dr. Lenz, and nothing was done about his behavior because he could be counted on to harass me. An investigation was performed with a 4-member committee. One of the 4 was Dr. Casal, a Radiologist from Orlando. It was clear from her aggressive questioning of me that she had been prepped by either her Chief Dr. Hoy, who is friends with Dr. Lenz and Martinez, or directly by Dr. Lenz. Her questions were about my credentials and competency with no interest in investigating the allegations about improprieties in the department. I contacted the Chief of the panel to have her recused from the deliberating process but never heard back. My competency was questioned to other people who appeared before the committee. No other Radiologist competency was questioned.

x.   In late 2019, the person who conducted the "Key Audit", who is not a member of the Radiology Dept., was called to meet with the investigating committee by Dr. Lenz, to discredit my character, although Dr. Lenz knew I had written statements from 6 people who were at the key exchange that stated I was completely professional.

y.      In late May 2019, Dr. Lenz went to a meeting to re-credential me. At this meeting he raised questions of my competency, so that I would be placed on summary suspension and taken out of my scope of work. 300 cases were supposedly picked at random by NTP, a tele-radiology service that works for the VA, to review. I was told by Bay Pines that NTP uses a random number generator to choose these cases randomly to insure fairness. I have in writing, from NTP that they have no random number generator. I believe the cases sent to NTP were among thousands of cases that Dr. Lenz, Velasco, Martinez and Lucas looked at to ensure that discrepancies would be found to portray me as a poor Radiologist. When I went to Bay Pines to review these cases in January 2020, I asked that the audit function be activated, which would show who looked at these cases, so I could ensure that the cases were chosen randomly. They denied my request.

z.      I had to make a request to Dr. Lenz to use my office to review the cases in January 2020 that were sent to NTP, so that I could defend myself at the Medical Executive Committee meeting to appeal my summary suspension. Dr. Lenz had sent me an email to not seek out or speak to people in the department when I was there. When I arrived on January 22nd, nothing in my office was functional to review cases. Dr. Lenz knew I would be there and made no attempt to ensure that I could use my office workstation. I had to scramble and find another office to work in as I was only given 2 days to review cases. While I was moving my personal items from my office to the office I would be using, our program analyst walked in and said hello. I said hello and asked for the data on how many cases I had read that year and how many times I had been peer reviewed. She said yes and asked for me to send her an email to remind her which I did.

aa.     On March 4, 2020, Dr. Lenz harassed me by sending me an email saying he wanted to meet. I called him to ask the topic of the meeting, and he refused to tell me which is a violation of my Weingarten Rights. I then called the Union who spoke to him, and he reluctantly said "Discipline" with no details. I was informed of this by the union. I told Dr. Lenz that I would see when the Union was able to meet, and he replied that I had to meet with him and gave me the date and time and told me I could meet with the Union later which is also a violation of my rights. I spoke to the Union, and they again contacted him. He reluctantly relented.

bb.     On March 6, 2020, I given a proposed admonishment for insubordination and failure to follow instruction for supposedly undermining Dr. Lenz's

ability to lead the department. The admonishment for failure to follow instruction was later sustained by Dr. Elamin.

## COUNT I
### (National Origin and Race Discrimination)

27.     Plaintiff Joseph Oliveira sues Denis McDonough, as Secretary of the Department of Veterans Affairs, for national origin and racial discrimination under Title VII.

28.     Plaintiff incorporates and realleges paragraphs 1 through 26.

29.     The actions taken by Defendant, including the timely raised discrete acts, are part of a long pattern of materially adverse actions, statements, and antagonism against Plaintiff.

30.     As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of Plaintiff's national origin (Colombia) and race/ethnicity (Hispanic).

31.     Defendant, through the Plaintiff's supervisors, has engaged in, directed, and/or ratified discriminatory conduct, and has frustrated Plaintiff's efforts to obtain relief and intentionally maintained these discriminatory and unlawful practices to the detriment of its employees.

32.     At all relevant times, Defendant knew or should have known of the discriminatory actions being taken against Plaintiff and failed to take necessary action

to prevent or correct those actions and, in fact, ratified such conduct. In the alternative, these practices were motivated by discriminatory animus.

33.     Defendant, through acceptance of such conduct in this case and others, has adopted it and fostered an attitude among administrators, managers, and supervisors at the Young VAHCS that discrimination against employees is an acceptable employment practice.

34.     Because of the willful actions of Defendant and its administrators, managers, and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied his rights to equal employment opportunity in violation of Title VII.

35.     As a result of the foregoing, Plaintiff has been damaged. Plaintiff's damages include but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress.  Plaintiff will continue in the future to suffer these damages absent relief from this Court.

36.     Plaintiff has satisfied all conditions precedent to the filing of this suit, has been prevented by the Defendant from satisfying such conditions, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs, and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II
**(Retaliation)**

37.    Plaintiff Joseph Oliveira sues Denis McDonough, as Secretary of the Department of Veterans Affairs, for retaliation under Title VII.

38.    Plaintiff incorporates and realleges paragraphs 1 through 26.

39.    Plaintiff engaged in EEO activity which is protected under Title VII that included good-faith opposition to unlawful discrimination as well as participation in his own EEO case.

40.    Defendant was aware of each of Plaintiff's protected activities.

41.    The actions taken by Defendant, including the timely raised discrete acts, are part of a long pattern of materially adverse actions, statements, and antagonism against Plaintiff.

42.    The aforesaid adverse employment actions, other adverse actions, misconduct, and other conduct, acts, and omissions to Plaintiff's detriment were all taken by administrators and managing and supervisory personnel of the Young VAHCS in retaliation for Plaintiff's protected activity, as set forth above.

43.    As a direct and proximate result of Plaintiff's protected EEO activity, Plaintiff has suffered adverse employment actions and other adverse actions, including as set forth above. Alternatively, these practices were motivated by a discriminatory animus.

44.    Defendant has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.

45.     Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiffs.

46.     Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

47.     Defendant, through Plaintiff's supervisors, has engaged in, directed, and/or ratified retaliatory conduct and has frustrated the Plaintiffs' efforts to obtain relief under Title VII.

48.     Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers, and supervisors at the Young VAHCS that retaliation against employees to discourage protected EEO activity is an acceptable employment practice.

49.     Because of the willful actions of the Defendant and its administrators, managers, and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied his right to equal employment opportunity in violation of Title VII.

50.     As a result of the foregoing, the Plaintiff has been damaged. Such damages include, but are not limited to, loss of pay; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress.  Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

51.     Plaintiff has satisfied all conditions precedent to the filing of this suit, has

been prevented by the Defendant from satisfying such conditions, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT III
### (Age Discrimination)

52.    Plaintiff Joseph Oliveira sues Denis McDonough, as Secretary of the Department of Veterans Affairs, for age discrimination under federal sector provision of the ADEA, 29 U.S.C. § 633a.

53.    Plaintiff incorporates and realleges paragraphs 1 through 26.

54.    The actions taken by Defendant, including the timely-raised discrete acts, are part of a long pattern of materially adverse actions, statements, and antagonism against Plaintiff.

55.    As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by Defendant because of Plaintiff's age (60).

56.    Defendant, through Plaintiff's supervisors, has engaged in, directed, and/or ratified discriminatory conduct, and has frustrated Plaintiff's efforts to obtain relief and intentionally maintained these discriminatory and unlawful practices to the detriment of its employees.

57. At all relevant times, Defendant knew or should have known of the discriminatory actions being taken against Plaintiff and failed to take necessary action to prevent or correct those actions and, in fact, ratified such conduct. In the alternative, these practices were motivated by discriminatory animus.

58. Defendant, through acceptance of such conduct in this case and others, has adopted it and fostered an attitude among administrators, managers, and supervisors at the Young VAHCS that discrimination against employees is an acceptable employment practice.

59. Because of the willful actions of Defendant and its administrators, managers, and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied his rights to equal employment opportunity in violation of the ADEA.

60. As a result of the foregoing, Plaintiff has been damaged. Plaintiff's damages include but are not limited to loss of pay; loss of benefits; and payment of attorneys' fees and legal costs. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

61. Plaintiff has satisfied all conditions precedent to the filing of this suit, has been prevented by the Defendant from satisfying such conditions, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT III
**(Harassment and Hostile Work Environment)**

62.     Plaintiff Joseph Oliveira sues Denis McDonough, as Secretary of the Department of Veterans Affairs, for harassment and hostile work environment under Title VII and the ADEA.

63.     Plaintiff incorporates and realleges paragraphs 1 through 26.

64.     Plaintiff belongs to the aforesaid protected groups and was subjected to unwelcomed harassment based upon his protected status. The harassment complained of has affected the terms, conditions, and privileges of Plaintiff's employment. The actions and conduct have created an intolerable hostile work environment and caused a change in Plaintiff's wages and working conditions.

65.     Given the long history of these actions and based upon all the conduct alleged, Defendant at all relevant times knew, or should have known, of the above-referenced harassment and hostile work environment against the Plaintiff and that it was based upon his national origin, race, age, or protected activity. Defendant has failed to take necessary action to prevent or correct the harassment and hostile work environment and, in fact, ratified such conduct.

66.     Defendant, through Plaintiff's managers and supervisors, has engaged in, directed, or ratified conduct and denied and frustrated Plaintiffs' efforts to obtain relief. Defendant, through acceptance of complained-of conduct, has fostered an attitude among management within the Young VAHCS that subjecting employees to harassment and a hostile work environment is an acceptable employment practice.

67.     Because of the willful actions of the Defendant and its administrators, managers, and supervisors, and as a proximate cause thereof, Plaintiff has been and will continue to be denied his rights to equal employment opportunity in violation of Title VII and the ADEA.

68.     As a result of the foregoing, Plaintiff has been damaged. Such damages include but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

69.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT IV
## Injunctive Relief

70.     Plaintiff Joseph Oliveira sues Denis McDonough, as Secretary of the Department of Veterans Affairs, for discrimination, including retaliation, under Title VII and the ADEA.

71.     Plaintiff incorporates and realleges paragraphs 1 through 26.

72.     Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

73.     There is (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction is issued; (3) the threatened injury to Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

74.     Plaintiff requests the Court award his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions, and conduct:

a.      Violating Title VII and the ADEA, as described above, including retaliation against Plaintiff for protected EEO activity and discrimination based on national origin, race, and age.

b.      Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Joseph Oliveira hereby demands a trial by jury on all issues so triable.

Date: May 16, 2022                              Respectfully submitted,


**/s/ Joseph D. Magri**
Joseph D. Magri
Sean McFadden
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Tel. (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com